ITZEL, Appellant, vs. WINN and others, imp., Respondents.

*January 11—February 22, 1910.*

*Judgment:* Res judicata: *Mandate construed: Conveyance of land by trustee: Incumbrances: Wrongful possession of land: Liability for taxes paid by owner.*

1. Disallowance by the county court of a claim against an estate for breach of the covenant against incumbrances in a warranty deed from the decedent to the claimant, on the ground that the deed was a purely voluntary conveyance, involved only the question of the legal liability of the estate on such covenant, and is not a bar to a subsequent action by the grantee to compel the executor and trustee of the decedent to remove the incumbrance in question pursuant to the terms of his trust.

2. In an action of interpleader brought by the executor and trustee of a decedent to determine the validity and effect of a warranty deed given by the decedent in her lifetime and the duty of the trustee, in whom the legal title was vested, as to transferring such title to the grantee named in said warranty deed free of incumbrances, a judgment sustaining the validity of the warranty deed as an effective exercise of the power of appointment reserved to the grantor in her prior conveyance to the trustee, and directing the trustee to "deed the property in dispute" to the grantee in said warranty deed, is decisive of a subsequent action between the same parties in which said grantee seeks to compel the executor and trustee to cancel and discharge a mortgage which was specifically in question in the former action.

3. When a person holding the legal title to land and also a mortgage thereon is commanded by a judgment to "deed" the land to a party who has by his pleading asserted his right to a deed clear of incumbrances, such judgment should be construed as requiring an effective deed conveying the premises free from the lien of such mortgage.

4. A wrongdoer who excludes the owner from the possession of land and deprives him of the rents and profits may be liable for such rents and profits but cannot be compelled to reimburse the owner for taxes paid during such wrongful occupancy.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

This is an action in equity brought to compel cancellation and discharge of a mortgage upon a city lot owned by the plaintiff in the city of Milwaukee, and for further relief.

The facts are that prior to June, 1897, one Mathilda O. Abbey, now deceased, was the owner of the lot in question, and that during that month she conveyed it, together with her other real estate and personal property, altogether amounting to considerably more than $100,000, to the defendant *John E. Winn,* in trust to hold and manage, sell, collect rents and profits, apply so much of the receipts as he might think proper to the support of the grantor, and reinvest the proceeds of collections and sales as he might think best, making it his duty to provide for the suitable comfort and support of the grantor during her life, defray the costs and expenses of maintaining

the property, pay the lawful debts of the grantor theretofore contracted, and upon her decease, after payment of all her just debts and the expenses of the trust, to convey and assign the remainder of the property to such person or persons as the grantor might by instrument in writing, duly witnessed, acknowledged, and delivered in her lifetime, or by will appoint. It further appears that *Winn* accepted the trust and at once took possession of the trust property and entered on the discharge of his duties; that Mrs. Abbey was old and infirm; that the premises in question were subject to a mortgage of $5,000 executed by Mrs. Abbey March 18, 1897; that on September 2, 1898, Mrs. Abbey executed and delivered to the plaintiff a warranty deed of the premises; that she died two days later, leaving a will (which has been duly probated) wherein, after certain minor bequests, she gave and devised the residue of her estate, one fourth to her half-sister, the defendant *Annie Mathews,* and three fourths to her nephew, the defendant *Taylor,* both of Philadelphia; that the defendant *Winn* was duly appointed executor of the will of the deceased and is now such executor; that the defendants *Mathews* and *Taylor* denied the validity of said warranty deed to the plaintiff and demanded that said *Winn* convey the said property to them, whereupon the said *Winn* in the year 1899 brought an interpleader action in the circuit court for Milwaukee county against the plaintiff and *Mathews* and *Taylor,* setting up the facts and asking the court to determine the rights of the parties in said lot; that after trial the circuit court set aside the deed because obtained by fraud and undue influence; that upon appeal to this court that judgment was reversed May 2, 1905, and the deed declared valid, and judgment was ordered "directing the trustee to deed the property in dispute to the defendant *Itzel*" (*Winn v. Itzel,* 125 Wis. 19, 103 N. W. 220); that on July 6, 1905, judgment was entered in the circuit court for Milwaukee county pursuant to the mandate of the supreme court, adjudging that said *Winn* "deed the prop-

erty in dispute herein, to wit [describing it], to the defendant *Anna H. Itzel;"* and that on January 8, 1906, the said *Winn* made a conveyance of the property in dispute and delivered the same to the plaintiff, *Itzel,* but the terms of the conveyance do not appear from the evidence.

It further appeared that in July, 1899, the plaintiff, *Itzel,* filed in the county court of Milwaukee county a contingent claim against the estate of Mrs. Abbey in which she claimed to be entitled under the covenants of warranty in her deed to have the $5,000 mortgage aforesaid satisfied out of the funds of the estate or else to be paid a sufficient sum to satisfy the same herself, and that objections to the claim were filed and a trial had and the same was disallowed April 12, 1906. It was also shown that the defendant *Winn* met the defendants *Mathews* and *Taylor* in February, 1900, and had an accounting with them of the funds in his hands as trustee and executor, and the balance of such funds was determined; that the question of the $5,000 note and mortgage was then raised (the same not having been presented by its holder as a claim against the estate and the time fixed for the presentation of claims having expired); that *Mathews* and *Taylor* insisted that it should not be paid out of the trust funds, and *Winn* insisted that he must be protected against the possible allowance of it as a contingent claim in favor of *Miss Itzel;* that it was finally agreed that *Winn* should purchase it of the holder, taking the money out of the funds belonging to *Mathews* and *Taylor* and taking an assignment in blank; that he should fill his own name in the assignment and discharge the mortgage if the contingent claim was allowed, but should fill in the names of *Mathews* and *Taylor* and deliver all the papers to them if the claim was disallowed, and that this arrangement was carried out, the assignment in blank being taken by *Winn* February 6, 1900, and the note, mortgage, and assignment having been since held by him; that *Winn* had collected but $9.19 as rent upon the premises; that he paid the taxes for 1898 thereon out of the trust funds and the county taxes for

1899 but no more; and that the plaintiff, *Itzel,* redeemed the taxes accruing thereafter up to and including the taxes of 1906, and paid therefor with interest and fees an aggregate of $1,231.

The court concluded that the mortgage still remained a valid lien on the property, and entered judgment dismissing the complaint and adjudging the mortgage to be a valid lien, and the plaintiff appeals.

*F. C. Eschweiler,* for the appellant.

For the respondents there was a brief by *Frank M. Hoyt* and *Guy D. Goff,* and oral argument by *Mr. Hoyt.*

WINSLOW, C. J. The respondents contend that the plaintiff's claim is barred both by the judgment of the county court disallowing plaintiff's contingent claim against the estate of Mrs. Abbey and by the judgment of the circuit court in the former action of *Winn v. Itzel,* 125 Wis. 19, 103 N. W. 220, rendered pursuant to the direction of this court. As to the judgment of disallowance of the contingent claim, it seems clear that it cannot be held as *res adjudicata* in this case. It clearly appears that the claim filed in the county court was simply a claim to recover against the estate for breach of the covenant of warranty against incumbrances contained in the deed from Mrs. Abbey to the plaintiff, and that it was rejected simply because the county court held that deed to be a voluntary conveyance, based upon no valuable consideration but only upon love and affection, and hence upon familiar principles there could be no recovery upon the covenant of warranty. That controversy only involved the question of the legal liability of the estate upon the covenant of warranty. Neither the question as to the duty of the trustee, *Winn,* to discharge the mortgage, nor the question of the validity of the mortgage after its purchase by *Winn* with moneys of the trust estate, was actually or necessarily involved, considered, or decided in that case.

The action of *Winn v. Itzel,* however, did involve in sub-

stance the question involved in this case. Though the action
was an action of interpleader and the present is essentially an
action to remove a cloud upon title, both were between the
same parties and both really involved the same general ques-
tion, namely, the question as to the effect of the warranty deed
before mentioned, and whether it became the duty of the
trustee, by reason of the execution and delivery of that deed,
to transfer to *Miss Itzel* the legal title of the premises in dis-
pute free of incumbrances. It is true that the former action
contained a larger question, namely, the question whether that
deed was obtained by fraud, and, if that question were to be
decided in the affirmative, then the other questions dropped
out of the case; but, on the other hand, if that question were
to be decided in the negative, then it became necessary at once
to decide the other questions as to the duty of the trustee.
This appears certain because the trustee made all the claim-
ants parties and laid the whole controversy before the court
and prayed for direction as to his duty; the defendants *Taylor*
and *Mathews* came in and denied the validity of the warranty
deed and prayed that *Miss Itzel* be required to quitclaim her
apparent title to them; while *Miss Itzel* came in and alleged
the validity of the deed and claimed that it was the duty of
the trustee, by virtue of the trust deed, the warranty deed,
and the directions of Mrs. Abbey, to execute to her a good and
sufficient deed of the premises *free of all incumbrances,* the
very incumbrance now in question being named and described
in the pleading. So it seems not to be doubtful that the issue
whether the mortgage in question should be paid by the trustee
was fully presented and litigated between these same parties
in the former action. True, the circuit court did not decide
the question, because it held that the deed was void and hence
there could be no duty on the part of the trustee under it; but
when the case came here and this court held the deed to be
valid, then the question of the trustee's duty under it became
necessary to be decided. Examination of the briefs upon

that appeal show that counsel on both sides devoted their entire attention to the question of the validity of the deed and said nothing about the detail results in case the deed were held valid.    It seemed to be taken for granted that if the deed were valid the results were not doubtful, and it is very evident that both counsel and court considered that the validity of the deed, if established, called for an affirmative judgment directing the trustee what to do with the legal title which had been placed in his hands in trust.    The trustee had asked the court for direction as to his duty, the parties interested had asked for the same thing, and it was the duty of the court to respond.

It is to be regretted perhaps that this court did not respond more explicitly to this call.    The mandate was that the judgment be reversed and the cause remanded with directions "to enter judgment directing the trustee to deed the property in dispute to the defendant *Itzel.*"    It appears that judgment was entered in the circuit court in these words and that the trustee has made a deed (presumably a quitclaim deed) of the premises to *Miss Itzel,* but that the mortgage is still outstanding, having been purchased by the trustee in February, 1900, out of the trust funds in his hands under the arrangement with the respondents *Taylor* and *Mathews,* which is fully set forth in the foregoing statement of facts.    The question now is as to the construction of that mandate.    Does it mean that the trustee is to execute a bare quitclaim, or that he is to execute an effective deed of the lot?    The mandate says he is to "deed the property in dispute."    Now the property in dispute very clearly was the lot, free and clear of the mortgage.    This court certainly was not expecting to frame a judgment which would leave undecided vital questions for future lawsuits and only partially respond to the issues made by the pleadings.    That the court considered Mrs. Abbey's warranty deed as an effective exercise of the power of appointment which Mrs. Abbey reserved to herself under her deed

of trust cannot be doubted, because under no other theory would it be the duty of the trustee to make a deed. But if it was an effective appointment, then it was an appointment with a direction to make the deed free of incumbrances, because it contained a warranty against incumbrances.

We construe the mandate as a mandate to make an effective deed conveying the lot, and not a mere quitclaim conveying nothing but the equity of redemption after half or more of the property had been exhausted by incumbrances. This construction becomes more reasonable also from the fact that at the time the mandate was pronounced and ever since the trustee has been in possession of the mortgage by purchase with trust funds used for that purpose by the consent of the respondents. Thus it appears that the trustee was in position at that time and ever since to make an effective deed of the property. When a person holding the legal title of real estate and a mortgage on the same real estate is commanded by a judgment to "deed" the same to a party who has by his pleading asserted his right to a deed clear of incumbrances, it would seem that a fair construction of the word "deed" demands that he make an effective deed, not a deed which in effect reserves half the beneficial interest to himself. So we construe the judgment in the former action as requiring the trustee to make a deed clear of incumbrances, and hence decisive of the present action in the plaintiff's favor upon that question.

The plaintiff also seeks to recover the taxes which she has paid on the premises during the time between the execution of the Abbey deed in 1898 and the date of the execution of the deed by the trustee in 1905, on the ground that during this period she was kept out of possession by the defendants wrongfully and deprived of the rents and profits, and that the wrongdoers should be compelled to reimburse her for the taxes paid during such period. We know of no legal principle which would justify such a recovery. Property owners must pay the taxes on their own property. If a wrongdoer takes pos-

session of the property he is or may be liable for the rents and profits during his occupancy, but not for the taxes which the owner pays.    The proof shows that as matter of fact a tenant was in possession during the whole time; that owing to a notice from the plaintiff the tenant paid no rent to the trustee except $9.19; and that the property was in so ruinous a condition that the trustee concluded it to be unwise to attempt to collect the rent by legal proceedings or to repair the property.

There should be a judgment against *Winn* for the $9.19 so collected as rent, in addition to judgment declaring the property to be free from the lien of the mortgage in question.

*By the Court.*—Judgment reversed, and action remanded with directions to render judgment for the plaintiff in accordance with the opinion.

BARNES, J., dissents.